

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable Arthur B. Knickerbocker
Brigadier General
The Adjutant General
Austin, Texas

Dear Sir:

Opinion No. O-5625
Re: Liability of members of
Texas State Guard for per-
sonal injury or property
damage caused by them while
on duty and operating under
orders of their commanding
officers.

We have received your recent request for an opinion,
quoted as follows:

"Attached hereto is: Exhibit A - The form of
oath taken by each enlisted man in the Texas State
Guard. Exhibit B - The form of oath taken by each
officer in the Texas State Guard.

"There are two principal phases of activity by
men in the Texas State Guard: 1. Active service,
pursuant to call by the various officials designated
in law. 2. The formations for training and maneu-
vers, where the men are directly under command of
their officers, and the officers acting under in-
instructions of the Commanding General.

"The members of the Texas State Guard, when not
on active duty under official call as prescribed by
law, serve without remuneration from the State of
Texas.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable A. B. Knickerbocker, page #2

"I wish to submit for your opinion the question whether an officer or enlisted man in the Texas State Guard, under either of the above types of activity, is personally liable and subject to suit for personal injury or property damage by reason of his operation of motor vehicles or other equipment in possession of the Texas State Guard and operated by him under orders of his commanding officers.

"We have been informed unofficially that a precedent case involved a member of the Former Texas National Guard in Dallas, Texas.

"Incidentally, the Texas State Guard has been accorded recognition by the War Department as the organized militia of the state, pursuant to federal law; and generally the motor vehicles or other equipment used by its members is equipment owned by the United States and furnished to the State for training and performing the active duty of the militia."

Article 5765, Vernon's Annotated Civil Statutes, as amended by House Bill No. 585, enacted by the Forty-eighth Legislature, reads as follows:

"The militia of this State shall be divided into two (2) classes, the active and reserve militia. The active militia shall consist of organized and uniformed military forces of this State which shall be known as the Texas National Guard or the Texas State Guard, as the case may be; the reserve militia shall consist of all those liable to service in the militia, but not serving in the Texas National Guard or the Texas State Guard."

Said House Bill No. 585 further provides, in part, as follows:

"Section 1 (a). Authority and name. Whenever any part of the National Guard of this State is in active Federal service, the Governor is hereby authorized to

Hon. A. B. Knickerbocker, page #3.

organize and maintain within this State during
such period, under such regulations as the Secre-
tary of War of the United States may prescribe
for their organization, standards of training,
instruction and discipline, such military forces
as the Governor may deem necessary to defend this
State. * * *

"(b)  Such forces shall be a part of the active
militia and a component of the Military Forces of
Texas and shall be additional to and distinct from
the National Guard and shall be known as the Texas
State Guard:  Provided, however, that members of
the Texas National Guard who are not at the time in
Federal service may be used, under the authority of
the Adjutant General, to command, instruct, train
and administer all or any component of the Military
Forces of this State, including such State Guard."

"Section 2 (a).  Organization.  Rules and Regula-
tions.  The Governor is hereby authorized to prescribe
rules and regulations not inconsistent with the pro-
visions of this Act governing the enlistment, organi-
zation, administration, uniforms, equipment, mainte-
nance, command, training and discipline of such forces;
provided such rules and regulations, in so far as he
deems practicable and desirable, shall conform to ex-
isting law governing and pertaining to the National
Guard and the rules and regulations promulgated there-
under."

Article 5838, Vernon's Annotated Civil Statutes, as
amended by said House Bill No. 585, provides as follows:

"Active militia service.  The military forces of
this State when called into active service of this
State in time of war, insurrection, invasion, or im-
minent danger thereof, or the prevention of invasion,
shall during their time of service, be entitled to
the same pay, rations, and allowances for clothing
as is now or may hereafter be established by the laws
for the army of the United States."

There is no provision in the laws creating the Texas State Guard exempting any member thereof from civil liability for the death or injury to another person or from property damage.

The authorities are very meager in regard to the civil liabilities of members of the militia. From the decisions of the Federal appellate courts (Federal Digest, Vol. 46, title Militia, key number 19) we note that it is generally recognized that a member of the militia may be civilly liable for torts committed by him.

We quote from Volume 36, American Jurisprudence, pages 264-266, as follows:

"Sec. 116. Personal Liability of Persons in Military Service.—It is a well-established rule that persons engaged in the military service of the state or nation are not liable in a civil suit for damages for acts done in the course of their military duties, in obedience to the lawful orders of a superior officer, or, as stated by some authorities, in obedience to orders which are apparently lawful or not apparently lawful, but if such orders are illegal, or apparently illegal, or are such as a man of ordinary sense and understanding would be justified in deeming illegal, they afford no justification for the wrongful act. * * *."

\* \* \* \* \* \*

"A soldier is responsible for damages for all acts done by him without orders or outside or in excess of his orders. The mere fact that one is a member of the military does not give him license to do those things which a civilian cannot do. * * *."

\* \* \* \* \* \*

"Sec. 17. Superior or Commanding Officers.— While inferior officers and soldiers bound to obey orders are protected in so doing, except where such orders

Hon. A. B. Knickerbocker, page #5.

show on their face their own illegality or want of authority, a superior officer is himself answerable for all acts within the fair scope of the orders given by him, and his only available defense is that the orders given by him were lawful. The general rule is that officers in command of military forces are not personally liable for injuries resulting from their official acts in the prosecution of lawful military operations. This rule is subject, however, to the limitation that personal liability may be incurred where the officer acts wantonly, or in the absence of any reasonable necessity. * * * Officers who have militia in command may be responsible for damages sustained by a citizen resulting from the practice of firing guns by members of the militia under their charge and at their command. * * *"

Therefore, we conclude that a member of the Texas State Guard, engaged in either of the types of activities described by you, is responsible for damages, in respect to either personal injuries or property damage caused by his acts of negligence, whether with or without orders or in excess of his orders. 135 ALR, 23, 31. We point out, however, that compliance by a private soldier with an order of a superior officer is sufficient justification for the violation of a traffic rule unless the order is so palpably unlawful that a reasonable man in the position of a person obeying it would perceive its unlawful quality, and that an order to keep a motor convoy together, even if that involved continuing in the face of a red light, although illegal, cannot be deemed palpably or obviously illegal to a soldier charged with the operation of one of the trucks in the convoy, but it does not follow that a private soldier would be excused by such an order from the consequences of negligence in any other respect than the violation of the ordinance, as for example, failure to slow down or stop if he ought to have foreseen that there was danger of a collision, and that an order to disregard lights would not be equivalent to an order to drive recklessly or negligently with respect to conditions other than lights, and could furnish no justification to the truck driver beyond its scope. 133 ALR, 1296, 1298.

Hon. A. E. Knickerbooker, page #6


Trusting that the foregoing fully answers your questions, we are

APPROVED JUN 7 1945

ATTORNEY GENERAL OF TEXAS

RLL-s

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Robert L. Lattimore, Jr
Robert L. Lattimore, Jr
Assistant


APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN